UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERENCE SANDY McCRAY,

                              Plaintiff,

                                                    **Hon. Hugh B. Scott**

                                                    **13CV949A**

              v.                                    **Report
                                                    &
                                                    Recommendation**

THE CITY OF ALBANY NEW YORK,
C.O. AYERS, C.O. ROSIA,

                              Defendants.

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 31).  Before this Court is the remainder of so much of the motion of defendants

Roshia and Ayers (also collectively referred to as "movants") for summary judgment (Docket

No. 95) in their favor regarding plaintiff's remaining claims against them from a March 2012

incident (see Docket No. 134).  This Court rendered a Report & Recommendation (Docket

No. 112) on movants' motion which recommended granting summary judgment to movants as to

that claim.  (This Court discussed but ultimately did not make any recommendation on the

alternative ground movants urged of qualified immunity, Docket No. 112, Report at 14-15.)

Upon objections (Docket No. 119) to that Report, Judge Arcara granted summary judgment to

movants dismissing plaintiff's claims for the two 2011 incidents and adopted this Court's

recommendation to deny plaintiff's motion (Docket No. 134; cf. Docket No. 93, pl. motion for

summary judgment), McCray v. City of Albany, et al., No. 13CV949, 2017 U.S. Dist. LEXIS

62169 (W.D.N.Y. Apr. 24, 2017).  As for claims arising from the third incident in March 2012, Judge Arcara remanded that matter to this Court to determine the authenticity of a video purportedly depicting that incident (id. at 3-6).

Movants thus were given until May 25, 2017, to authenticate the video at issue (as discussed herein) and responses from plaintiff were due by June 8, 2017, with the motion deemed submitted as of June 8, 2017, without oral argument (Docket No. 135).  Plaintiff then moved for additional time in which to respond (Docket No. 137) which was granted (Docket No. 139).  Responses and submission of this motion was extended to July 7, 2017 (Docket No. 139).

Movants submitted their attorney's declaration with the declaration of Captain Charles Coventry who investigated the incident to authenticate the video tape (Docket No. 136). Plaintiff' filed a preliminary response (Docket No. 138).  After recounting other claims, plaintiff contends that Captain Coventry's statements were lies, "intentionally met [sic] fraudulent evidence for which defense counsel relies on, and this Court is reviewing" (id. Pl. Decl. ¶¶ 11, 20).  He concludes that there is a material issue of fact (id. ¶ 17), that he was not the inmate depicted in the March 1, 2012, 7 p.m. video (id. ¶ 18).  Plaintiff, noting that Coventry submitted a photograph taken in 2006, contends that he was not imprisoned until 2010 (id. ¶ 21(a); but see Docket No. 135, Coventry Decl. ¶ 17, Ex. B).

Later, plaintiff filed in reply his Declaration in Chief (Docket No. 140) addressing his objections to prior findings of this Court (for example, seeking discovery due to learning of Roshia's retirement, id. ¶¶ 2-5, this Court's findings as to plaintiff's injuries and whether they stated a violation of the Eighth Amendment, id. ¶¶ 6-20).  There, he concludes that Captain

Coventry lied and submitted a fraudulent video purportedly of the incident (id. ¶¶ 28-33),

faulting this Court for attempting to resolve the issue of fact regarding who was depicted in the

proffered video (id. ¶ 23).  In urging rejection of movants' qualified immunity contention (id.

¶¶ 15, 17, 22-24), plaintiff argues that any unresolved issue of fact should preclude summary

judgment on qualified immunity grounds (id. ¶ 21, citing Warren v. Dwyer, 906 F.2d 70, 76 (2d

Cir.), cert. denied, 498 U.S. 967 (1990)), and should draw inferences in favor of the non-movant

and not resolve genuine disputes of fact in favor of movants (id. ¶ 22, citing Tolan v. Cotton,

572 U.S. ___, 134 S.Ct. 1861, 1866 (2014) (per curiam) (applying the Rule 56 standard for

summary judgment to assertion of qualified immunity)).

Familiarity with the previous Report (Docket No. 112) and Judge Arcara's Order (Docket

No. 134; McCray, supra, 2017 U.S. Dist. LEXIS 62169) is presumed.

## BACKGROUND

Plaintiff initially commenced this action in the United States District Court for the

Northern District of New York against numerous defendants including the City of Albany, New

York, prosecutors, probation officers, police officers, and corrections officers Jenkins, Ayers,

Roshia, Callieri, and Fischer (Docket No. 1, Compl.; see Docket No. 56, Report & Rec. of

May 5, 2015, at 1-2), with plaintiff later amending this Complaint (Docket No. 23; see Docket

No. 56, Report at 2).  Judge Glenn Suddaby of the Northern District of New York severed the

claims as asserted against the Department of Corrections and Community Services ("DOCCS")

officers from other claims, transferring the former claims to this District (Docket No. 26).  Upon

review in this Court, Judge Michael Telesca dismissed all of plaintiff's transferred claims against

Fischer, Jenkins, and Callieri, and ordered service of the Amended Complaint only upon Ayers

and Roshia as for plaintiff's claim arising from pat frisks (Docket No. 28, Order of Mar. 28, 2014, at 5, 10-12; see Docket No. 33 (correcting Order to have service of Amended Complaint); see also Docket No. 56, Report at 2 & n.2).

As for these remaining pat frisk claims, plaintiff alleges that his genitals were grabbed and squeezed during a pat frisk and that, in at least one incident, Roshia then put his finger in plaintiff's anus (Docket No. 23, Am. Compl. ¶¶ 451 (Sept. 1, 2011), 453-55 (April 21, 2011), 456 (March 5, 2012); see also Docket No. 140, Pl. Decl. ¶¶ 7, 16 (stressing severity of injuries)), claiming that this constituted a sexual assault.

*Movants' Motion for Summary Judgment Against Plaintiff's March 2012 Claims*

Remaining before this Court, movants Roshia and Ayres argue in their motion for summary judgment that, according to plaintiff's deposition testimony, on March 1, 2012, his testicles were squeezed by defendant Roshia, and this pat frisk was recorded in a video (Docket No. 95, Ex. A, Pl. EBT Tr. at 48-57, 54). During plaintiff's deposition, he testified to writing a report about the incident (id., Tr. at 48-49) and that the incident occurred near the magnetometer at 6 or 7 pm (id., Tr. at 49). Movants produced as an exhibit a video purporting to be from the March 1, 2012, incident (id., Ex. E; id., Defs. Statement ¶ 44). They contend that plaintiff was wearing a red shirt in the video (Docket No. 95, Defs. Statement ¶ 45), which plaintiff strenuously denies (Docket No. 106, Pl. Statement at 2).

Plaintiff responds, first, that movants misconstrued or misunderstood the facts in that he never claimed that Roshia frisked or assaulted him on March 5, 2012, but instead on March 1, 2012, instead (Docket No. 104, Pl. Objections and Oppositions at 1, 5; Docket No. 95, Ex. A, Pl. EBT Tr. at 48-57, 54; Docket No. 106, Pl. Statement at 1), with his Complaint (Docket No. 23,

Case 1:13-cv-00949-RJA-HKS    Document 141    Filed 08/01/17    Page 5 of 25

Am. Compl. ¶ 456) describing a medical report, dated Mar. 5, 2012, Ex. 64, complaining of pain attributable to this third incident (cf. Docket No. 95, Movants' Statement ¶¶ 31-32). Plaintiff concluded that he did allege an Eighth Amendment violation (Docket No. 104, Pl. Objections at 4).

In reply to his own motion (Docket No. 93) for summary judgment, plaintiff asserted that he needed discovery to resist movants' motion (Docket No. 108, Pl. Addendum at 1), claiming that a different video recording of the March 1, 2012, incident existed but was not produced by movants (Docket No. 106, Pl. Undisputed Statements of Fact at 2). Also in renewing his motion for appointment of counsel plaintiff argued that the inmate depicted in the defense video was not him; first, he claimed that he would never wear a red or burgundy sweatshirt; second, the incident occurred at 7 **pm** while the video is time-stamped 7 **am**; third, the inmate depicted weighed 125 pounds more than plaintiff (Docket No. 110, Pl. Letter at 1, 2). He reasserts the denial that the person depicted in defense video was him in an affirmation (Docket No. 111).

*The Video*

The movants produced a video (Docket No. 97, Ex. E) showing an inmate wearing a red sweatshirt walking the corridors of a prison until he reaches a magnetometer station. There, he is pat frisked, with one officer in front of one camera view. From the views seen by this Court, it appears that the inmate was not touched in his lower body and showed no signs of distress either during or at the conclusion of the pat frisk. There was no audio to this video, so whatever was claimed to be said by the parties could not be heard. The inmate being frisked did not appear to react to anything said to him during the frisk and did not appear to be agitated or distressed.

*Report of April 6, 2016, and Judge Arcara's Order*

This Court first recommended denying plaintiff's motion (Docket No. 93) for summary judgment (Docket No. 112, Report at 9-10, 16) and denied his renewed application for appointment of <u>pro bono</u> counsel (<u>id.</u> at 16).  Next, this Court recommended granting summary judgment to movants for all three incidents of fondling alleged by plaintiff (on April 21, 2011, August 31-September 1, 2011, and March 2012), finding that plaintiff was able to respond to the motion (<u>id.</u> at 10-12, 12-14 (March 2012 claim), 15-16).  Alternatively, this Court did not make any recommendation on movants' relief based on qualified immunity (<u>id.</u> at 14-15).

Upon objections from plaintiff (Docket No. 119), Judge Arcara adopted in part that Report, in particular accepting the denial of plaintiff's motion (Docket No. 93) and partial grant of movants' motion (Docket No. 95) as to claims arising from the two 2011 incidents (Docket No. 134).  Judge Arcara deferred decision, however, on movants' motion regarding the third March 2012 incident claim, remanding the matter to the undersigned for further proceedings (<u>id.</u> at 6), remanding "for the limited purpose of addressing the Plaintiff's contentions regarding the authenticity of the video of the March 2012 incident" (<u>id.</u>; <u>see also</u> <u>id.</u> at 3-5).  Judge Arcara noted that the video was "in some respects, inconsistent with the Plaintiff's description of the third incident" (<u>id.</u> at 4; <u>see</u> <u>id.</u> at 4-5 (noting inconsistencies)).  Pointing to Federal Rule of Civil Procedure 56(e)(1) and (4), this Court is authorized to give movants "an opportunity to properly support or address the fact" of the authenticity of the video presented (<u>id.</u> at 5).

Movants thus were given until May 25, 2017, to submit information on the authenticity of that video.  They produced the officer who investigated the March 1, 2012, incident, Captain Coventry and plaintiff's deposition testimony to authenticate the video (Docket No. 136).

Captain Coventry identifies plaintiff from a 2006 photograph from DOCCS's inmate population management screen (Docket No. 136, Coventry Decl. ¶ 17, Ex. B). Coventry also states that the incident could not have occurred at 7 a.m., as plaintiff contends, but in the evening since the time-stamp on the videos of the magnetometer are all in the evening (id. ¶¶ 12-13); further, no inmates were allowed out of their cells at 7 a.m. (id. ¶ 12). Coventry again viewed the video after plaintiff's challenge to its authenticity and confirmed that plaintiff was depicted (id. ¶¶ 17-18). Movants' counsel notes that the time signature on the video is incorrect "as it was most likely p.m. and not a.m." (Docket No. 136, Def. Atty. Decl. ¶ 12 n.1; id., Coventry Decl. ¶¶ 11-12). There is no explanation how that time stamp was incorrect.

Movants include exhibits presented during plaintiff's deposition, namely his prior grievance (Docket No. 136, Defs. Atty. Decl. ¶¶ 7, 8, Ex. A (earlier referenced as Docket No. 95, Defs. Motion, Ex. B)). At the deposition, plaintiff confirmed the authenticity of the grievance (Docket No. 136, Defs. Atty. Decl. ¶ 9, Ex. B; Docket No. 95, Defs. Motion, Ex. A, Pl. EBT Tr. at 41-48, 43-48). Movants compare plaintiff's grievance description of the March 1, 2012, incident with the video, claiming that "the inmate depicted in that video performs the same activities as those alleged by the plaintiff in his grievance" (Docket No. 136, Defs. Atty. Decl. ¶ 10). The grievance stated that plaintiff was ordered to return to his cell from the law library because he had cards, but rather than return, plaintiff threw out the cards (id. ¶¶ 11, 13, Ex. A, Bates Nos. 000008, 000009). Movants then compared the video which showed an inmate walking to the magnetometer and then appearing to conceal something before returning to that magnetometer station (id. ¶¶ 12, 14, 16-17). Plaintiff reported in his grievance that he then returned to his cell to dispose of the cards (id. ¶ 15, Ex. A, Bates No. 000009). At the

magnetometer station, plaintiff states in his grievance that he was denied access to the law library and ordered to return to his cell block; plaintiff protested and then was pat frisked (id. ¶ 18, Ex. A, Bates No. 000009-10). In the video, movants contend that the inmate approached the checkpoint, put down his papers, had a conversation with officers and left (id. ¶ 19). The inmate in the video is then stopped by an officer assisting with a pat down and was then pat frisked (id. ¶ 20). In the video (id. ¶ 22) and plaintiff's grievance (id. ¶¶ 21, 23, Ex. A, Bates No. 000010, 000011), the inmate looked back to see the nametag of the searching officer. In the grievance, plaintiff then claims that he limped back to his cellblock, followed by another officer (id. ¶ 24, Ex. A, Bates No. 000011), where the video shows the inmate walking back (id. ¶ 25), without indicating whether that inmate appeared to limp. Plaintiff stated that he resided in 11 Block (id. ¶ 26, Ex. B, Pl. EBT Tr. at 61) (as plaintiff termed it, id., Ex. B, Pl. EBT Tr. at 61) and Captain Coventry stated that the inmate in the video returned to Block 11 (id.; id., Coventry Decl. ¶ 16). Movants conclude that "plaintiff's allegations as documented in his grievance correspond nearly perfectly with the actions conducted by the inmate in the video" (id., Defs. Atty. Decl. ¶ 27).

Movants present the video's chain of custody how Coventry obtained it (Docket No. 136, Defs. Atty. Decl. ¶ 5; id., Coventry Decl. ¶ 7). Coventry, during the course of his investigation of plaintiff's grievance, viewed the Loronics DVD of the video of the March 1, 2012, incident; the video was pulled from the Loronics system and that video was provided to defense counsel in this action (id., Coventry Decl. ¶ 7). Once viewed, the video was kept in the captain's office (id.). There is no statement from any operator of the video recorder (such as to explain the time-stamp discrepancy). Movants did not present affidavits from corrections officers or inmates

8

present during the March 1, 2012, pat frisk.  Initially, movants relied upon the video and

plaintiff's grievance (see Docket No. 95, Defs. Statement ¶¶ 31-53).

Plaintiff responds that the video still did not depict him or the March 1, 2012, evening pat

frisk and fondling (Docket Nos. 138, 140, Pl. Decl. ¶ 5).  As stated previously, plaintiff contends

that Coventry is lying (Docket No. 138, Pl. Decl. ¶¶ 11, 20), raising some issues of material fact

as to who was depicted in the video (id. ¶¶ 17, 21(e)), that he was not the inmate depicted in the

March 1, 2012, 7 p.m. video (id. ¶ 18), and the time of the incident (7 a.m. as opposed to 7 p.m.).

Plaintiff, noting that Coventry submitted a photograph taken in 2006, contends that he was not

imprisoned until 2010 (id. ¶ 21(a); but see Docket No. 135, Coventry Decl. ¶ 17, Ex. B).  He

counters Coventry's statement that an inmate count occurred at 7 a.m. when plaintiff states that

such counts occur at 5 a.m. (id. ¶ 21(b)).  Because of the time discrepancy in the video, plaintiff

concludes that "this fraudulent video" cannot be used as evidence (id., at page 5 of 12, emphasis

removed).  For example, the video is time-stamped at 7 a.m., but the law library (where plaintiff

was going to) was not open at that time (id. ¶ 21(e), at page 7 of 12).  Another discrepancy

plaintiff points to is that the inmate in the video weighed more than 144 pounds (plaintiff's

weight) and did not appear to look like him (id., at pages 7, 8 of 12).

## DISCUSSION

I.    Applicable Standards

A.    Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'"  Lazard Freres &

Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party

must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986), the party against whom summary judgment is sought, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

(emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124

(2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002.  The opponent

to a summary judgment motion may argue that he cannot respond to the motion where it shows,

by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition,"

Fed. R. Civ. P. 56(d).

 The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The

movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent

submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

As with pleadings, the filings of a pro se plaintiff in response to a summary judgment motion are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam) (see Docket No. 140, Pl. Decl. ¶ 27).

B.    Authentication

A movant asserting that a fact cannot be disputed must support the assertion by citation to the record (including documents, electronically stored information or other materials, Fed. R. Civ. P. 56 (c)(1)(A). "Authentication of evidence is a condition precedent to admissibility," Gonzalez v. Digital Equip. Corp., 8 F. Supp. 2d 194, 196 (E.D.N.Y. 1998). Under Federal Rule of Evidence 901, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a). Movants, as proponents of the video as evidence needed to authenticate it by showing how it was recorded, collected, and time-stamped, see United States v. Whittingham, 346 Fed. App'x 683, 685 (2d Cir. 2009) (summary Order) (allowing admission of video where time-stamp had discrepancy of five minutes). Videos are not self-authenticating and require authentication testimony, Leo v. Long Is. R., 307 F.R.D. 314, 323-26 (S.D.N.Y. 2015); Soto v. City of N.Y., No. 13CV8474, 2017 U.S. Dist. LEXIS 31296, at

*2-3, 1 (S.D.N.Y. Mar. 6, 2017) (on motion for summary judgment, rejecting both parties'

videos authenticated only by counsel's statements); see also Groski v. City of Albany, No. 1:12-

CV-1300, 2014 U.S. Dist. LEXIS 76458, at *7 n.4 (N.D.N.Y. June 5, 2014) (on motion for

summary judgment, holding plaintiff satisfied authentication of video by her affidavit stated that

the video fairly and accurately depicted what transpired).

     C.    Sexual Assault as Eighth Amendment Violation

     Plaintiff initially alleged a series of pat frisk and assaults, but the supported claims (and

hence both motions) arise from three pat frisk incidents on April 21, 2011, August 31-

September 1, 2011, and March 2012 (Docket No. 95, Defs. Statement ¶ 7; see Docket No. 23,

Am. Compl. ¶¶ 451, 453, 465).  After partial adoption of this Court's first Report (Docket

Nos. 134, 112), remaining at issue is the March 2012 incident.  Even the date of that incident had

some discrepancy by the parties; plaintiff contends that the frisk occurred on March 1, 2012

(Docket No. 104, Pl. Opposition Memo. at 5; Docket No. 105, Defs. Memo. in Opposition at

third unnumbered page), while movants thought the incident occurred on March 5, 2012 (Docket

No. 95, Defs. Statement ¶ 31, citing Docket No. 23, Am. Compl. ¶ 456).  That Amended

Complaint cited to a March 5, 2012, medical report from the earlier incident (Docket No. 23,

Am. Compl. ¶ 456).

     Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997), held that sexual abuse by a

corrections officer may constitute cruel and unusual punishment violative of the Eighth

Amendment only if it is "severe or repetitive."  Under Crawford v. Cuomo, 796 F.3d 252 (2d

Cir. 2015), the Second Circuit later clarified the standard set forth in Boddie, supra, stating that a

"single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth

Amendment rights no less than repetitive abusive conduct," 796 F.3d at 257, and that "a corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment," id.  As noted by Judge William Skretny in <u>McCray v. Sedita</u>, No. 15cv425, 2015 U.S. Dist. LEXIS 140992, at *13 (W.D.N.Y. Oct. 8, 2015)[1] (quoting <u>Crawford</u>, <u>supra</u>, 796 F.3d at 257-58), the principal inquiry "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate" (Docket No. 100, Defs. Memo. in Opposition at 15).

II.    Movants' Motion for Summary Judgment

A.    March 2012 Incident

As for this final incident, movants contend that (as an isolated instance) it is not actionable under the Eighth Amendment (Docket No. 95, Defs. Memo. at 10-14; Docket No. 100, Defs. Memo. in Opposition at 12-16), <u>Boddie</u>, <u>supra</u>, 105 F.3d at 861.  Plaintiff originally alleged that he was the victim of a series of malicious pat frisks (<u>see</u> Docket No. 106, Pl Undisputed Statements of Fact at 1), but substantiation was made for only three incidents. Plaintiff did not cite to anything in the record of daily sexual assaults (<u>cf.</u> Docket No. 106, Pl. Statement at 1); plaintiff probably was frisked daily (in fact testifying in his deposition that he was pat frisked several times a day, Docket No. 95, Defs. Memo. Ex. A, Pl. EBT Tr. at 18 (frisked at least three times a day, some times more frequently, each day)) but he fails to show that he was assaulted during those frisks on a daily basis.  Previously, claims arising from the

---

[1]Plaintiff in this case was Demetrius McCray.

two 2011 incidents were dismissed (Docket No. 134).  Thus, the basis for his Eighth Amendment

claim is that the remaining March 2012 incident was sufficiently severe to constitute cruel and

unusual punishment, Crawford, supra, 796 F.3d at 257; see also Boddie, supra, 105 F.3d at 861

(sufficiently severe or repetitive contact, whether a single incident was sufficiently serious to be

a constitutional violation).

On the present record, even with supplementation by movants on the authentication of the

video they cite, there remain several issues of fact.  For instance, the record initially was not

clear whether it occurred on March 1 or March 5, 2012, with plaintiff asserting that the incident

occurred on March 1, 2012 (e.g., Docket No. 106, Pl. Undisputed Statements of Facts at 1;

Docket No. 136, Defs. Atty. Decl., Ex. A, Pl. EBT Tr. at 48).  After Judge Arcara remanded this

motion for further proceedings, the parties seem to agree on March 1, 2012, as the date of the

incident (e.g., Docket No. 136, Defs. Atty. Decl. ¶ 2; Docket No. 138, Pl. Decl. ¶ 7).  March 5

was when the medical report was created arising from the March 1 incident.  Thus, the date of

the incident, March 1, 2012, is not at issue.

There remains an issue of fact as to who was the inmate depicted in the March 2012

video produced in support of movants' motion.  The purpose for further briefing on the

authentication of the video was to resolve this issue.  Plaintiff denies that he is the inmate

depicted in the video (Docket No. 98, Pl. Motion for Appointed Counsel Memo. at 2; Docket

No. 106, Pl. Statement at 1-2; Docket No. 110, Pl. Letter; Docket No. 111, Pl. Affirm.; Docket

No. 138, Pl. Decl.), claiming (for example) that he would never wear red in the facility (Docket

No. 106, Pl. Statement at 2; Docket No. 104, Pl. Memo. at 5; Docket No. 111, Pl. Affirm.).

14

Initially, this Court found these issues of fact were not material due to the fact that they applied to a single, apparently not severe incident, rather than a pattern of abuse (Docket No. 112, Report at 12, 13), finding that, even accepting plaintiff's version of events and disregarding the video, the single instance was not sufficiently severe or serious to constitute cruel and unusual punishment, Crawford, supra, 796 F.3d at 257 (id. at 13).  There, it was noted that plaintiff's medical complaints following the frisk (Docket No. 23, Am. Compl. at page 104 of 114), arising days later, did not show sufficient injury to state a cruel and unusual punishment claim.  If the frisk occurred on March 1, 2012, he waited at least two days (see Docket No. 23, Am. Compl. at page 104 of 114) before seeking medical attention without stating that he was restrained from seeking help in the intervening period.  Plaintiff had not shown that movants engaged in intentional conduct aside from that which is the appropriate for penological and security purposes a search for contraband and protection of staff and other inmates.  (Docket No. 112, Report at 13-14.)  Plaintiff now argues the severity of his injuries show the wantonness of movants (Docket No. 140, Pl. Decl. ¶¶ 7, 9-10, 15-16).

But Judge Arcara, in remanding this matter, noted plaintiff's testimony about the incident (Docket No. 134, Order at 4, quoting Docket No. 95, Ex. A, Pl. EBT Tr. at 53-54)), wherein Roshia ordered plaintiff to position himself for the pat frisk while using racial epithets and stating that plaintiff did not like this and then proceeded to grope plaintiff until plaintiff reacted to the pain (id.).  Given the issues arising from the defense video leading to its authentication (discussed below), Judge Arcara did not address whether the date of the incident was material (id. at 6), the relevance of the video (id. at 5), or whether that single incident sufficiently raises a constitutional claim.

Next, this Court turns to the question whether the video produced by the defense depicts the alleged incident on that date.

B.        Authenticity of Video

Movants contend that the video is from the March 1, 2012, incident, as confirmed by plaintiff's testimony describing the incident, the plaintiff's grievance, and the investigating hearing officer's declaration (Docket No. 136). Plaintiff renews his argument that the video did not show him or that incident (see Docket Nos. 138, 140, Pl. Decl. ¶ 5). Defendants contend that plaintiff filed a grievance from the March 1, 2012, pat frisk and the description of the events in that grievance support the events depicted in the video (Docket No. 136, Defs. Atty. Decl. ¶ 10).

Plaintiff raises several issues to try to establish material issues of fact whether this tape is of him or of the pat frisk. First, Captain Coventry identifies plaintiff from what he calls a 2006 DOCCS inmate population management photograph (Docket No. 136, Coventry Decl. ¶ 17, Ex. B; see also Docket No. 138, Pl. Decl. ¶ 21(a) (denying that he was in state custody in 2006). But from the exhibit itself, the photograph was taken in 2016, ten years later than 2006 (Docket No. 136, Coventry Decl. Ex. B); thus, Coventry (and by extension, plaintiff) was mistaken by the date.

Next, the parties dispute whether inmates would be allowed out of their cells in 7 a.m., the time plaintiff claims the pat frisk occurred (compare Docket No. 136, Coventry Decl. ¶¶ 11-13 with Docket No. 138, Pl. Decl. ¶ 21(b)), based upon the time stamp on the video tape being in the morning (Docket No. 136, Defs. Atty. Decl. ¶ 12 & n.1). Plaintiff in his grievance stated that he was on his way to the law library during Mod 4, which Coventry explained was a period at the facility from 6:45 p.m. to 9:40 p.m. (Docket No. 136, Coventry Decl. ¶¶ 14, 13; id., Defs. Atty.

16

Decl. Ex. A, plaintiff's grievance at 2).  Plaintiff contends that the video does not depict the incident because it was not taken from 7 p.m., accepting the time stamp of approximately 7 a.m. and that the defense-produced video does not depict his travels during Mod 4, the evening period (Docket No. 138, Pl. Decl. ¶ 21(c), at page 5 of 12).  The inmate misbehavior report for this incident stated that it occurred approximately at 7:25 p.m. (id., Ex. A).  In that misbehavior report Officer Calleri requested that a copy of the Loronix video be made of the pat frisk (id.). Movants do not explain the reason for the error in the time stamp.

The video depicts an inmate wearing red and weighing or appearing to plaintiff to resemble him, walking and being stopped at a time when there would be no program in the law library.  Movants counter with the conclusions of the investigating corrections official, Captain Coventry that he believed the inmate depicted in the video is plaintiff (Docket No. 136, Coventry Decl. ¶ 17, Ex. B).  This Court, in reviewing the video again attempted to compare the inmate filmed with the photograph purported to be plaintiff from Captain Coventry's declaration (Docket No. 136, Coventry Decl., Ex. B), but the video image is too distant and grainy to discern the face of the inmate to make a comparison.

Although movants have the statement of Captain Coventry vouching for the accuracy of the video, he was not involved in its creation or recording, although cases hold that authentication need not have the photographer provide proof, McEachron v. Glans, No. 98-cv-17, 1999 U.S. Dist. LEXIS 21926, at *9 (N.D.N.Y. Aug. 23, 1999).  Captain Coventry merely requested production of the video.  As noted above, there are too many discrepancies between the time-stamp, the clothes and build of the inmate as compared with plaintiff, and plaintiff's version of the incident (in his grievance, his deposition testimony, and in these motions) and

17

what is shown on this tape to squelch questions of the authenticity of the video. Some of this issue goes to its probative value, an issue for a finder of fact, see Groski, supra, 2014 U.S. Dist. LEXIS 76458, at *8 n.4, that is not appropriate at the summary judgment stage. Therefore, movants **have not provided sufficient evidence of the authenticity of the video depicting plaintiff being searched on March 1, 2012**.

Nevertheless, this Court next considers whether movants should have plaintiff's March 1, 2012, claim dismissed.

C.      Severity of This Single Incident

As a single remaining incident, if the pat frisk and fondling of March 2012 is sufficiently severe or serious, Crawford, supra, 796 F.3d at 257; Boddie, supra, 105 F.3d at 861, plaintiff's Eighth Amendment rights may have been violated as much as if he were repeatedly assaulted in a similar manner. In part this then turns on whether the video in fact depicted the incident or not. If this video did not depict the incident, then this Court is left with the parties' conflicting versions of what occurred; clearly presenting **material issues of fact to preclude summary judgment**. If, however, the video was of the incident, that video shows an innocuous encounter of an inmate with corrections officers at a magnetometer without any indication of untoward touching of that inmate to the degree plaintiff's claims and medical record after the incident indicate, cf. McCray, supra, 2015 U.S. Dist. LEXIS 140992, at *13.

From this Court's review of Def. Ex. E, Docket No. 97, the video depicts a bald black man wearing jeans and a red sweatshirt walking down a facility corridor and is stopped and frisked at a magnetometer without apparent incident (Docket No. 97, Defs. Ex. E; see Docket No. 112, Report & Rec. at 5, 6, 7, 12-13). This Court also compared the photograph provided of

18

plaintiff with Captain Coventry's declaration (Docket No. 136, Coventry Decl. ¶ 17, Ex. B) with the man depicted in the March 2012 video; it was unclear from the video whether that was (or was not) the same person as identified in Coventry's photograph of plaintiff.  Thus, **issues of fact remain** whether this video depicts plaintiff's pat frisk on March 1, 2012.

If this video in fact depicted the March 1, 2012, incident, the question is whether it was sufficiently severe to constitute a constitutional violation or showed movants' subjective intent in conducting this search, cf. McCray, supra, 2015 U.S. Dist. LEXIS 140992, at *13.  Again, this Court finds that the video shows nothing untoward occurred (see Docket No. 112, Report & Rec. at 5, 6, 7, 12-13).  There is no audio on the video, so whatever was said between the inmate and corrections officers is not preserved on this video.  What can be seen, following a long sequence of an inmate walking down the corridor, is the inmate being pat frisked (with the attendant touching) by an officer (although other officers sometimes block the view).  There does not appear to be lingering by the officer in the pelvic area where plaintiff claimed he was fondled. Several other officers were present during the pat down, as well as a few transient inmates; no one reacted as if anything unusual had occurred between the searching officer and the inmate. No visible distress or reaction of any kind is seen from the inmate during the frisk.  From the duration of the pat down from the time counter on the video (as well as the disc player's internal clock); the incident took less than two minutes.  Furthermore, there is no identification in the video of who the officer was who pat frisked the inmate.  From this video, it is impossible to tell the officer's subjective intent other than to search for potential contraband.

Plaintiff denies that this was him in that video—the clothing, body size, and time depicted he claims were all wrong.  Defendants disagree.  Taking the video out as evidence, the

19

motion remains a credibility dispute between plaintiff (who strenuously argues that the assault was severe) and movants (who contend that a normal, non-assaultive pat frisk occurred). With or without the video, there are classic issues of fact. As a result, movants' summary judgment motion (Docket No. 95) should be **denied** due to the material issues of fact raised herein that cannot be resolved in a motion for summary judgment.

Thus, on the substance of their motion, this motion for summary judgment in favor of movants (Docket No. 95) should be **denied** due to the material issues of fact that remain. These defendants alternatively argue that they should enjoy qualified immunity and the claim dismissed on that basis (Docket No. 95, Defs. Memo. at 14-16; see Docket No. 100, Defs. Memo. in Opposition at 16-18). This Court in the earlier Report (Docket No. 112, at 14-15) did not consider movants' immunity given the recommendation to grant summary judgment on the substantive merits; Judge Arcara also did not address this alternative in remanding this matter (cf. Docket No. 134). This Court next turns to qualified immunity.

D.    Qualified Immunity

Movants alternatively argue that if Crawford (decided in 2015 after the incident) has altered Eighth Amendment law in this area, they should be allowed to rely upon Boddie (decided in 1997) and the state of pat frisk law as of 2012 when this incident allegedly occurred and be granted qualified immunity (Docket No. 95, Defs. Memo. at 14-16; No. 100, Defs. Memo. in Opposition at 16-18). Plaintiff responds that, under Boddie, the existing standard in 2011-12, movants still violated his Eighth Amendment rights (Docket No. 107, Pl. Memo. at 3-4).

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the

injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.  As discussed above, this Court first considered the substance of the alleged constitutional violation and then defendants' claim of qualified immunity.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity."  Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Movants here were bound by the construction of pat frisk standards announced in Boddie in 1997 and not the changes in interpretation that the Second Circuit announced in 2015 in Crawford that held sufficiently egregious single incident may constitute a constitutional violation.  Under Boddie, a single incident of sexual misconduct, however egregious, was not sufficiently serious to state a claim for cruel and unusual punishment, 105 F.3d at 861 (assertion

of "a small number of incidents in which he allegedly was . . . touched, and pressed against without his consent. No single incident that he described was severe enough to be 'objectively, sufficiently serious,'" quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (internal citations omitted)). This may have been the finding of the facts of the particular case in <u>Boddie</u>. Again, accepting plaintiff's version these corrections officers acted inappropriately in a solitary instance, see <u>Tolan</u>, <u>supra</u>, 134 S.Ct. at 1866, under existing Second Circuit law as of the date of the incident (2012) they thus enjoy qualified immunity. Despite plaintiff's contrary argument (Docket No. 140, Pl. Decl. ¶¶ 11, 15), the standard in 2012 was not whether movant Roshia's actions were reasonable (<u>cf. id.</u> ¶ 15). The law in this Circuit in 2012 was that a single wanton infliction of pain (<u>cf. id.</u> ¶ 12, plaintiff quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 10 (1992), quoting in turn <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976)) did not state a claim. <u>Hudson</u> itself held that "that is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action," 503 U.S. at 9.

Plaintiff asserts that issues of fact may preclude summary judgment on qualified immunity grounds. <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir. 1990), cited by plaintiff (Docket No. 140, Pl. Decl. ¶ 21), in a case tried by jury noted that the better practice was for qualified immunity to be considered in a motion for summary judgment or on a motion for directed verdict if taken to trial. But that court noted where "there are unresolved factual issues which prevent an early disposition of <u>the defense</u>, the jury should decide these issues on special interrogatories." <u>Id.</u> (emphasis added). Here, the material factual issues whether or not the video depicts plaintiff and the incident do not go to the defense of qualified immunity. This Court could resolve movants' claims to immunity without resolving whether or not the video depicted the incident.

But issues still exist whether or how the incident occurred, whether plaintiff's or movants'
version of events occurred, to determine the severity of contact with plaintiff. Even under
Boddie, a sufficiently severe single instance of assault may violate the Eighth Amendment and
deprive the assaulting officers of qualified immunity. This fact issue precludes summary
disposition of defendants' qualified immunity defense.

Thus, movants' alternative ground of qualified immunity for their actions should be
**denied**.

III.    What Remains After Recommendations

Judge Arcara adopted (Docket No. 134) much of the April 2016 Report (Docket No. 112)
dismissing plaintiff's other claims against movants. As concluded above, this Court
recommends denying summary judgment on the remaining claim against these movants for the
March 2012 incident, on the merits of the claim and upon movants' claim of qualified immunity.
As such, since this action was severed from the Northern District of New York case (Docket
No. 26), if this Report is adopted, the March 2012 claim would remain pending here.

So far as this Court is aware, plaintiff still has his claims pending in the Northern District
of New York against other parties.

**CONCLUSION**

Based upon the above, it is recommended that movants' motion for summary judgment
(Docket No. 95) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
August 1, 2017