```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

TERENCE SANDY McCRAY,

        Plaintiff,

  -vs-

THE CITY OF ALBANY NEW YORK,
C.O. AYERS, C.O. ROSIA,

        Defendants.

**DECISION and ORDER**
**No. 1:13-cv-00949-MAT-HBS**

**INTRODUCTION**

*Pro se* plaintiff Terence Sandy McCray ("Plaintiff"), a prisoner in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983. The case comes before the Court upon the Report and Recommendation ("R&R") issued by United States Magistrate Judge Hugh B. Scott on August 1, 2017 (Docket 141), recommending that Motion for Summary Judgment (Docket No. 95) filed by DOCCS Corrections Officers ("CO") Russell Ayers ("Ayers") and Adam Roshia ("Roshia")[1] (collectively, "Defendants") be denied. For the reasons discussed below, the Court adopts the R&R in its entirety.

**BACKGROUND**

At this point in the proceeding, there remains one Eighth Amendment claim: that on March 1, 2012, CO Roshia subjected Plaintiff to a pat-

---

[1] Apparently, this is the correct spelling of this defendant's name, contrary to how it appears in the caption.

-1-

frisk that constituted a sexual assault without any legitimate penological purpose. Plaintiff testified at his deposition that Roshia ordered him to position himself for the pat-frisk while "whispering over [Plaintiff's] shoulder, [']you f---ing ni--er, you don't f---ing like this, ni--er?['] And he said it several times. I'm not responded, not one word. Then he—he didn't even pat frisk me . . . . He put his hands underneath my testicles and he squeezed them and he says, 'you like that, you f---ing ni--er?' And I didn't say anything." Docket No. 95-3 at 31-32 (Pl.'s Tr. 53:16-54:12). According to Plaintiff, Roshia continued to grope him in this way until he reacted to the pain. On March 5, 2012, Nurse Practitioner Salotti examined Plaintiff regarding the alleged sexual assault by Roshia and "reported that the exam did reveal a linear area on the posterior scrotum of ecchymosis, purplish in color and consistent with a new area of trauma about a day or two old in her medical opinion." Docket No. 136-1 at 7 of 9.

Defendants submitted, in support of their Motion for Summary Judgment, a surveillance videotape purporting to depict the incident involving Plaintiff and Roshia on March 1, 2012. They argue that it conclusively demonstrates that Plaintiff's rights were not violated. Plaintiff counters that he is not the inmate depicted in the video, that the inmate depicted in the video weighs 125 pounds more than he does, that he would never wear a red shirt inside a correctional facility (as the depicted inmate is wearing) because red is a gang color, and that while the inmate misbehavior report indicates that the incident occurred at 7:25 p.m., the time-stamp at the bottom the videotape reads "a.m."

At the request of United States District Judge Richard J. Arcara,

Magistrate Judge Scott was asked to hear and report on the issue of whether Defendants can properly authenticate the facility surveillance videotape they offered in support of their motion. *See* Docket No. 134 at 5-6. Magistrate Judge Scott then directed additional briefing on the authentication issue. Defendants submitted the declaration of Deputy Superintendent Charles Coventry ("Coventry") for purposes of authenticating the videotape. Coventry was a captain at Five Points Correctional Facility in 2012, and was responsible for investigating the alleged incident involving Roshia and Plaintiff. Coventry avers in his declaration that the incident could not have occurred at 7 a.m., as Plaintiff contends. Coventry states that 7 a.m. is the beginning of the second shift when the facility count occurs, and all inmates are confined to their cells during the count. Therefore, Coventry concludes, the events depicted in the video (i.e., an inmate on his way to the Activity Building) could not have occurred at 7 a.m., since at that time no programs are conducted, and no inmates are allowed out of their cells. Coventry "believe[s] that the timing of the video occurred during what [they] refer to as 'Mod 4[,]'" which "is run around 6:45 p.m. to 9:40 p.m." Docket No. 136 ¶¶ 12-13. According to Coventry, who viewed the video twice, Plaintiff is definitely the inmate depicted in it. In response, Plaintiff reiterated that he is not the inmate depicted in the video.

Magistrate Judge Scott viewed the video and determined that the image was too distant and grainy to discern the face of the inmate in order to make a comparison. Magistrate Judge Scott concluded that there are "too many discrepancies between the time-stamp, the clothes and build

of the inmate as compared with plaintiff, and plaintiff's version of the incident (in his grievance, his deposition testimony, and in these motions) and what is shown on this tape to squelch questions of the authenticity of the video." Docket No. 141 at 18. Magistrate Judge Scott noted that although Coventry and Defendants' counsel have admitted that the time-stamp is incorrect, this discrepancy has never been explained. In short, Magistrate Judge Scott found that there are genuine issues of material fact remaining as to the authenticity of the videotape, thereby precluding Defendants' reliance on the videotape to obtain judgment as a matter of law.

Defendants submitted objections (Docket No. 145), and Plaintiff submitted various responses to Defendants' objections (Docket Nos. 142, 146, & 152). Defendants submitted a reply to Docket No. 146 (Docket No. 149) as well as a letter from counsel (Docket No. 150).

**STANDARD OF REVIEW**

Recommendations made by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) "need not be automatically accepted by the district court." *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). Should either party object to a magistrate judge's report and recommendation, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). To preserve a claim for review by the district court, the party must make sufficiently specific objections to the R & R. *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (citing Fed. R. Civ. P. 72(b)). When a party makes sufficiently specific objections, the district judge must undertake a "*de*

*novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b)(1)(C), and "may . . . receive further evidence[.]" *Id.*; *see also Grassia*, 892 F.2d at 19 (discussing § 636(b)(1)(B)).

**DISCUSSION**

Defendants object to the R&R's conclusion that they did not adequately authenticate the videotape. In particular, Defendants fault the R&R for pointing out that they did not provide statements from the operator of the video recorder, or from inmates or officers that were present during the pat-frisk. *See* Docket No. 142 at (citing R&R at 8-9). Defendants assert that this type of testimony is not required to authenticate a video, and that circumstantial evidence, such as the declaration submitted by Coventry, is sufficient. *Id.* (citations omitted).

Federal Rule of Evidence 901 states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Thus, to authenticate the video, "Defendant[s] must demonstrate not only that Plaintiff is the individual depicted in the video but also that the video is authentic and that the events are accurately depicted." *Boykin v. W. Express, Inc.*, No. 12CV7428NSRJCM, 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016) (finding that the defendant had not properly authenticated video of the plaintiff; even though the plaintiff "has admitted that she is the individual in the videos, this alone does not confirm the genuineness or authenticity of what, according to [d]efendant, 'was truly and accurately

-5-

before the camera'") (citing *Mikus v. United States*, 433 F.2d 719, 725 (2d Cir. 1970)). While the Second Circuit "does not have a rigid formula for evaluating the authenticity of video tapes, the requisite indicia of authenticity can be created by presenting witnesses who recall the events depicted, testimony as to the chain of custody, testimony of the person recording the events, or any other evidence tending to show the accuracy of the depictions." *Boykin*, 2016 WL 8710481, at *5 (citing *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) (noting that "since recorded evidence is likely to have a strong impression upon a jury and is susceptible to alteration, [it] ha[s] adopted a general standard, namely, that the government 'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recording") (quotation omitted); *Gill v. Arab Bank, PLC*, 893 F. Supp.2d 542, 568-69 (E.D.N.Y. 2012) (holding that a video was authenticated where two witnesses to a particular event testified that the video was a fair and accurate depiction of the relevant event)).

Here, Coventry insists that Plaintiff is the inmate depicted in the video; Plaintiff insists that is a false statement. None of the other participants in the video have provided statements attesting to the accuracy of the video, and Coventry was not present during the event. Furthermore, Coventry provided no information regarding how the video was created or how the videorecording system was maintained, stating only that the "video was pulled off of the Five Points Loronics system and is the video which was provided to the Office of the Attorney General during the course of this litigation." Docket No. 136 ¶ 7; *contrast with Fuentes*, 563 F.2d at 532 (authenticity and accuracy of surveillance tapes

established by prosecution's "competent and uncontroverted proof that the recording devices were capable of recording the appellants' conversations, that the agents carefully placed the devices on the informant or in his vehicle, that the agents were able to observe most, if not all, of the incriminating conversations and identify each participant, and that the agents immediately removed and sealed the tapes after each meeting"). And, as Magistrate Judge Scott noted, *why* there is a discrepancy regarding the time-stamp on the video has never been explained. Moreover, even if Plaintiff admitted it was he depicted in the video, that would not necessarily be sufficient. *See Boykin*, 2016 WL 8710481, at *5 (finding that the defendant had not properly authenticated video of the plaintiff; even though the plaintiff "has admitted that she is the individual in the videos, this alone does not confirm the genuineness or authenticity of what, according to [d]efendant, 'was truly and accurately before the camera'"). The Court agrees with Magistrate Judge Scott Defendants here clearly have not fulfilled this standard.

Moreover, even assuming for the sake of argument that Defendants' submissions are sufficient to allow admission of the video into evidence, it is a far leap to the conclusion that the video obviates all genuine issues of material fact regarding Plaintiff's claim against Roshia. *See United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (summary order) (noting that "[t]he district court is merely obligated to assess whether the proponent [of evidence] has offered a proper foundation from which 'the jury could reasonably find that the evidence is authentic[,]'" while "'[t]he factual determination of whether evidence *is that which the proponent claims* is ultimately reserved for the jury'") (quoting *United*

-7-

*States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009); emphasis supplied). Thus, even if the video depicted the incident, it remains a question of fact as to whether the pat-frisk was just a pat-frisk as Defendants claim, or a forcible sexual touching by Roshia accompanied by racial slurs, as Plaintiff claims.[2]

## CONCLUSION

For the reasons discussed above, after reviewing the parties' submissions, the Court finds no error in Magistrate Judge Scott's R&R. Accordingly, the Court adopts the R&R (Docket No. 141) in its entirety.

**SO ORDERED.**

**S/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   January 23, 2019
         Rochester, New York.

---

[2] The Court notes that Plaintiff's deposition testimony about the incident—that he did not respond to Roshia's comments or move during the incident—is consistent with Magistrate Judge Scott's observation that "[n]o visible distress or reaction of any kind is seen from the inmate during the frisk." R&R at 19.

-8-