UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERENCE SANDY McCRAY,

                            Plaintiff,

              v.                                  **DECISION & ORDER**
                                                                  **13-CV-949-A**

C.O. AYERS, C.O. ROSIA,
                            Defendants.

---

## BACKGROUND

Plaintiff Terence Sandy McCray, acting *pro se*, initially commenced this civil rights action pursuant to 42 U.S.C. §1983 in the Northern District of New York in 2012. Both his initial complaint (Dkt. 1) and amended complaint (Dkt. 23) alleged civil rights violations by numerous defendants including the City of Albany, prosecutors, probation officers, police officers, and corrections officers. Judge Glenn Suddaby of the Northern District of New York severed the claims as asserted against the Department of Corrections and Community Services ("DOCCS") officers from other claims, transferring the former claims to this District. Dkt. 26. Upon review in this Court, Judge Michael Telesca dismissed all of Plaintiff's transferred claims except those against defendants Ayers and Rosia (hereinafter "Defendants") relating to certain pat-frisks Defendants conducted on Plaintiff, during the time Plaintiff was incarcerated—and Defendants worked as corrections officers—at Five Points Correctional Facility in the Western District of New York. Dkt. 28. Following

motion practice, this Court, in April 2017, issued an order which dismissed all of Plaintiff's claims against Defendants except for a single pat-search incident which occurred on March 1, 2012.   Dkt. 134. The case was referred to the Magistrate Judge for further proceedings, and eventually, this Court referred the case to mediation. Dkt. 166.

In July of 2024, the Court appointed two highly experienced attorneys, Mr. Sheldon Smith, Esq. and Ms. Laura Schwalbe, Esq., to represent Plaintiff as *pro bono* counsel for purposes of mediation which was then-ongoing as well as for any future trial.   Dkt. 168, 172, 173, 174, and 175.

In a November 2024 handwritten letter to the Court, Plaintiff demanded that his appointed counsel be removed and that he be permitted to proceed *pro se* with mediation.   Dkt. 184. Plaintiff advised the Court that he would "not comply with any further consultations with appointed counsels." Dkt. 184. On December 10, 2024, a status conference was held, and Plaintiff did not appear.   Dkt. 178.   Plaintiff's counsel, appearing on his behalf, advised the Court, consistent with Plaintiff's prior letter to the Court, that while Plaintiff agreed to the appointment of *pro bono* counsel for purposes of mediation, Plaintiff wanted to move represent himself *pro se* permanently.   Counsel further advised that thus far mediation had not been successful and that the case was otherwise ready for trial.   Dkt. 178.

A subsequent status conference was scheduled for March 19, 2025.   Prior to such appearance, on February 12, 2025, the Court issued an order directing that Plaintiff was to appear virtually via Microsoft Teams, from Sing Sing Correctional

2

Facility, where he was then housed. Dkt. 182.   The Court also directed that Plaintiff's *pro bono* counsel appear in person at such status conference. Dkt. 182. Despite such order and the appearance of his *pro bono* counsel in court, Plaintiff once again refused to appear. Dkt. 185.   The staff at Sing Sing Correctional Facility advised the Court that Plaintiff refused to appear.   Dkt. 183, 185.

At that point, defense counsel made an oral motion requesting dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b), based on failure to prosecute. Dkt. 185.   While the Court did not grant Defendants' motion, the Court did issue a Text Order which indicated "considering the age of this case and the fact that it is trial-ready, as well as the Court's busy docket, **an order will be issued for Plaintiff's virtual appearance on the next-scheduled status conference on 5/9/2025, at 9:00 AM, and Plaintiff is warned that should he refuse to appear on 5/9/2025, the Court will consider dismissal of this case under Fed. R. Civ. P. 41(b).**" Dkt. 185 (emphasis in original).   Such order, which also granted Plaintiff's demand that he be permitted to proceed *pro se,* relieved attorneys Smith and Schwalbe of their *pro bono* assignment and was sent to Plaintiff (Dkt. 185), who acknowledged receipt of it. Dkt. 188.

While the status conference scheduled for May 9, 2025, had to be adjourned twice (Dkt. 189, 194), this Court, in advance of each scheduled appearance, issued orders which directed that Plaintiff be produced by video at such status conference. Dkt. 190 and 195.   The Court also issued text orders, which were provided to Plaintiff, which twice further warned Plaintiff that "**should he refuse to appear**

3

**telephonically at the status conference…the Court will consider dismissal of the case under Fed.R.Civ.P. 41(b)**." Dkt. 189, 193 (emphasis in original).

At the May 20, 2025, status conference, the Court, after being advised that Plaintiff's *pro se* mediation efforts had failed,[1] set the case for a bench trial that would commence on November 4, 2025. Dkt. 196.

In anticipation of that scheduled trial, this Court, on September 17, 2025, entered a final pretrial order which provided, in part, that "[a] final pretrial conference will be held on Thursday, October 30, 2025, at 2:00 PM. **Plaintiff, who is appearing pro se**, and counsel for Defendants **must attend the conference**." Dkt. 198, p.1 (emphasis supplied).   The Order further directed that "[o]n or before October 22, 2025, the parties are directed to provide to the Court the required submissions listed below. One set of the required submissions should be filed electronically in the Clerk's Office and the other shall be provided to chambers."   *Id*. Among the required submissions was an Exhibit List, and in that regard, the Order directed that "Each party shall submit a list of exhibits it anticipates using at trial. The exhibits must be pre-marked by number only and any sub-exhibits should be pre-marked alphabetically. * * * Two copies of each documentary exhibit shall be provided to the Court at the pretrial conference. Each set of copies shall be 'tabbed' for reference and bound in a three-ring binder or in a similar fashion." *Id*., pp. 2-3.   The Order

---

[1] During the status conference, Plaintiff appearing *pro se* advised that during mediation the New York State Attorney General's Office had, through the mediator, conveyed a settlement offer to him but that such amount was so low it was "offensive." Dkt. 196.

further directed that each party must also submit a Witness List which included "the names and addresses (identifying town and state only) of all prospective witnesses and a brief summary of their anticipated testimony, including the anticipated date and length of testimony (in hours/minutes). The list must include rebuttal witnesses, but their anticipated testimony need not be summarized. Failure to meet these requirements with respect to any witness may result in preclusion of testimony by that witness." *Id.*, p. 3.   Finally, regarding the final pretrial conference scheduled for October 30, 2025, the Order directed that "at the final pretrial conference, the parties should also be prepared to discuss the narrowing of issues for trial and to cooperate in eliminating claims which are no longer germane. The goal of the pretrial conference is to help make certain that the trial proceeds in a clear and orderly fashion. The parties are to comply with this Order so that this goal will be attained."   *Id.*

Following the issuance of the final pretrial order, Plaintiff failed to abide by its terms.   Specifically, Plaintiff failed timely to file those submissions required under such Order.   Rather, on October 27, 2025, five days after the date on which such submissions were due, Plaintiff filed a handwritten document entitled "Witness List & Rebuttal," Dkt. 206, which partially identified four different individuals who he asserted are or were DOCCS employees along with another person he identified only as "Gangbanger Cellmate (AKA Villain)."   Dkt. 206, p. 3.   Plaintiff did not indicate what relevant testimony, if any, such witnesses had or would be able to provide regarding the sole remaining viable claim, *i.e.*, a March 1, 2012, pat frisk

5

performed on Plaintiff. The submission also purported to contain: an Exhibit List consisting exclusively of medical reports, *id.*, p. 5; a largely unintelligible document entitled "Requested Instructions and Damages," *id.*, pp. 7-8, as well as a listing of "Causes of Action as Were in Original Complaint." *Id.*, pp. 9-13.

On October 14, 2025, this Court issued two writs commanding Plaintiff's appearance in Court. Dkt. 207, Exhibit A. The first writ commanded that Plaintiff be produced to appear at the final pretrial conference scheduled for October 30, 2025, at 2:00 p.m., while the second writ commanded that Plaintiff be produced for trial on November 4, 2025. *Id*. However, Plaintiff refused transport under both writs, *see*, Dkt. 207, Exhibit B; and Dkt. 209, Exhibit B, and thus, Plaintiff failed to appear as directed, and the final pretrial conference had to be cancelled. The Court was advised by Assistant New York State Attorney Generals, who are representing Defendants, that because Plaintiff refused transport for the final pretrial conference, not only would he miss the final pretrial conference on October 30, 2025, but that he would not be able to be produced until <u>after</u> 9:30 AM on November 4, 2025, which was the date and time the Court had previously set for the commencement of trial. According to defense counsel, based upon Plaintiff's refusal of transport, the earliest that Plaintiff could be produced for Court in the WDNY was late in the afternoon on November 4, 2025, a time which after that set by this Court for his trial to commence. Dkt. 207, p. 4.

To afford the Plaintiff one final opportunity to have his trial, this Court, on October 30, 2025, entered an order which gave Plaintiff "one last chance to appear"

6

and "at great inconvenience to itself and its existing calendar" adjourned the start date of trial of this action one day from November 4, 2025, until November 5, 2025, at 9:30 AM. Dkt. 208, p. 5. Such order further provided that, "considering the age of this case, Plaintiff's history of failing to comply with this Court's directives in this case, the fact that it is trial-ready, that Plaintiff's obstructive conduct has already resulted in the postponement of trial, as well as this Court's busy docket, **Plaintiff is warned that should he refuse to appear on November 5, 2025, the Court will strongly consider dismissal of this case under Fed. R. Civ. P. 41(b).**" *Id.*, p. 5 (emphasis in original). The Order directed that a copy of it be hand-delivered to Plaintiff. *Id*.

After the issuance of the foregoing October 30, 2025, order, the Court was advised, on October 31, 2025, that Plaintiff, having been presented personally with the October 30, 2025, order warning him of the consequences of his continued refusal to be transported resulting in his failure to appear at the adjourned date set for his trial, once again refused transport. Dkt. 209.  In view of Plaintiff's refusal to appear, Defendants renewed their prior request for dismissal of this action based upon Plaintiff's failure to prosecute. *Id*.  In support of that motion, Defendants also submitted a declaration from the DOCCS counselor who works at the facility at which Plaintiff is presently incarcerated who presented Plaintiff with this Court's October 30, 2025, order. Dkt. 210.  Such individual indicated that she "made it clear to the Plaintiff that per the Court Order he was directed to appear for a trial" and that "as part of the Court's October 30th Order, that he would be required to travel to the

7

area where the trial will be held." Dkt. 210 ¶¶ 5, 6. Such individual further indicated that "Mr. McCray indicated to me that he would not be traveling to trial" and that "he believed that the 'Court order was not a real court order.'" Id., ¶¶ 7, 8.

For the reasons which follow, this Court grants Defendants' renewed motion to dismiss, and dismisses this case with prejudice.

**DISCUSSION**

Rule 41(b) of the Federal Rules of Civil Procedure provides that a case may be involuntarily dismissed if a plaintiff "fails to prosecute or to comply with these rules or a court order." As this Court has recently observed, "Rule 41(b) …'gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute.' *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962))." *Delee v. Matyas*, No. 20-CV-24-A, 2025 WL 2467022, at *1–2 (W.D.N.Y. Aug. 27, 2025). Indeed, the Second Circuit has recognized that "'it is beyond dispute' under our precedent 'that a district court may dismiss a case under Rule 41 (b) when the plaintiff refuses to go forward with a properly scheduled trial.'" *Lewis v. Rawson*, 564 F.3d 569, 580 (2d Cir. 2009)(quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.1990)); *see also* 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2370, at 389–95 & nn. 35–36 (3d ed. 2008) ("An action may be dismissed under Federal Rule 41(b) if the plaintiff, without offering some explanation that is satisfactory to the

8

court, is not ready to present his or her case at trial or if the plaintiff refuses to proceed at the trial.").

The Second Circuit has recognized, however, that dismissal for lack of prosecution is a "harsh remedy" that should only be employed in "extreme situations." *Harding v. Fed. Rsrv. Bank*, 707 F.2d 46, 50 (2d Cir. 1983) (quoting *Theilmann v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)). This is particularly true in cases, like this, involving *pro se* litigants, where dismissal for failure to prosecute should be granted only "when the circumstances are sufficiently extreme." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Nevertheless, *pro se* litigants still have an obligation to comply with a court's orders and rules and when they fail to do so, "they, like all litigants, must suffer the consequences of their actions." *Hibbert v. Apfel*, No. 99 Civ. 4246 (SAS), 2000 WL 977683, at *3 (S.D.N.Y. Jul. 14. 2000); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (*Pro se* litigants "are required to inform themselves regarding procedural rules and to comply with them.") (citation omitted).

Here, the Court notes that it has attempted to do all that it could to afford the Plaintiff the opportunity to have his day in court and present his claim. Indeed, during the pendency of this case, the Court appointed two highly experienced attorneys to represent Plaintiff *pro bono* in an effort to ensure that he had the benefit of counsel to assist him not only in any effort to settle the case, but also to present his case at trial. Plaintiff demonstrated his resolve in proceeding *pro se* by refusing to appear in Court with his *pro bono* counsel and advising the Court he would "not comply with

9

any further consultations with [them]." Dkt. 183, 185.   While this Court previously denied Defendants' motion to dismiss for failure to prosecute made after Plaintiff twice refused to appear for Court despite being ordered to do so, *see*, Dkt. 178, 183, 185, and issued multiple warnings that the consequences of his failure to appear might include dismissal of his case, *see*, Dkt. 185, 189, 193, 208, Plaintiff's obstructive conduct in refusing to appear for both his long-scheduled final pretrial conference and his trial—again having been advised of what the consequences of such conduct might be, *see*, Dkt. 193—will no longer be countenanced by this Court.

To be sure, the Second Circuit has "fashioned guiding rules that limit a trial court's discretion" when determining whether dismissal for failure to prosecute is appropriate in a particular case. *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).   Those factors include: (1) the length of the delay; (2) whether plaintiff was given notice that further delay would result in dismissal; (3) whether further delay would prejudice defendants; (4) a balancing of the court's interest in managing its docket with the plaintiff's right to an opportunity for his day in court; and (5) whether lesser sanctions would be effective.   *Id*. p. 254-257. However, consideration of such factors is not always particularly helpful when considering, as here, Plaintiff's refusal to appear for trial.   See *Lewis*,   564 F.3d at 577 (noting that *Drake* factors were "not particularly helpful" in analyzing whether dismissal was appropriate where plaintiff did not appear for trial). That said, this Court, upon its consideration of the foregoing factors, finds that none of them weigh

in favor of Plaintiff, and thus, the Court determines that dismissal for failure to prosecute is appropriate.

First, this case has been pending for well-over a decade, and the Court had the trial in this action scheduled for over five months. Based upon his refusal to appear before this Court in December of 2024 and March of 2025, Dkt.178, 183, 184, 185, this Court, since at least March of 2025, has repeatedly warned Plaintiff that his refusal to appear in Court could result in dismissal of this action. Dkt. 185, 189, 193, 208. Notwithstanding such warnings and despite being directed to do so, *see*, Dkt. 198, 208, Plaintiff has failed to appear at: (1) his final pretrial conference, *i.e.*, October 30, 2025; (2) his originally scheduled trial date, *i.e.*, November 4, 2025; and (3) the adjourned date set for trial, *i.e.*, November 5, 2025, a date which was reset after Plaintiff refused transport and to be produced at both his final pretrial conference and his original trial date. Dkt. 209, 210. Further, Plaintiff failed to comply with this Court's pretrial order regarding the timely filing of his trial submissions. Combined with Plaintiff's history of contumacious behavior in this case, such delay caused entirely by Plaintiff's refusal to appear for trial (combined with his failure timely to submit his trial submissions as required by Order of this Court), weighs in favor of dismissal.

Regarding the second factor—whether Plaintiff received notice that further delays would result in dismissal of this case—the Second Circuit has emphasized the importance of first giving the *pro se* litigant a direct warning that his case will be dismissed for failure to prosecute. *See e.g.*, *United States ex rel. Drake*, 375 F.3d

11

at 251. Here, Plaintiff repeatedly received such warnings in the past (Dkt. 185, 189, 193) and expressly received such a warning after he failed to appear for his final pretrial conference. Dkt. 208, 210. Despite those warnings, Plaintiff has refused repeatedly to appear for trial.

The third and fourth factors also weigh in favor of dismissal. It prejudices Defendants and burdens the Court to maintain this action on the Court's docket indefinitely in the hope that eventually Plaintiff will decide that he is willing to come to court and proceed to trial. *See Davison v. Grillo*, 2006 WL 2228999, at *2 (E.D.N.Y. Aug. 3, 2006)("It is not an efficient use of the Court's or defendants' resources to permit this case to languish on the docket in the hope that plaintiff will reappear in the future.").

Finally, where, as here, Plaintiff refuses to appear for his pretrial conference and twice refuses to appear on a date certain set for trial in the face of a warning that such conduct will result in dismissal of his claim, the Court cannot conclude that any lesser sanction would be effective.

## **CONCLUSION**

For the foregoing reasons, Defendants' renewed motion (Dkt. 209) to dismiss Plaintiff's amended complaint (Dkt. 23) is **GRANTED**, and Plaintiff's amended complaint is **DISMISSED** with prejudice for failure to prosecute. The Clerk of Court is directed to close the file.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Decision and Order would not be taken in good faith, and therefore *in forma*

*pauperis status* is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

*s/Richard J. Arcara*
**HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT**

Dated:   November 5, 2025